1  NEAL R. MARDER (SBN 126879)
   nmarder@winston.com
2  ALI R. RABBANI (SBN 253730)
   arabbani@winston.com
3  IAN C. EISNER (SBN 254490)
   ieisner@winston.com
4  SHAWN R. OBI (SBN 288088)
   sobi@winston.com
5  **WINSTON & STRAWN LLP**
   333 S. Grand Avenue
6  Los Angeles, California 90071-1543
   Telephone:  (213) 615-1700
7  Facsimile:  (213) 615-1750

8  Attorneys for Defendants
   EFT HOLDINGS, INC., VISMAN
9  CHOW, NORMAN KO, WILLIAM
   SLUSS, AND PYNG SOON

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14  SHUXIN LI, HAIYUAN ZHAO, YU       Case No. 13-CV-08832- DSF (CWx)
    HU, and HONGYAN LIU, on Behalf of
15  Themselves and All Others Similarly   **DEFENDANTS EFT HOLDINGS,**
    Situated,                             **INC., VISMAN CHOW, NORMAN**
16                                        **KO, WILLIAM SLUSS, AND PYNG**
              Plaintiffs,                 **SOON'S NOTICE OF MOTION AND**
17                                        **MOTION TO DISMISS FIRST**
         v.                               **AMENDED COMPLAINT;**
18                                        **MEMORANDUM OF POINTS AND**
    EFT HOLDINGS, INC. a Nevada           **AUTHORITIES IN SUPPORT**
19  Corporation, BUCKMAN, BUCKMAN         **THEREOF**
    & REID, INC., a New Jersey
20  Corporation, GREENSTONE               Hearing Date:   November 10, 2014
    HOLDINGS, INC., a New York            Hearing Time:   1:30 P.M.
21  Corporation, BROWN DOOR, INC., a      Location:       Courtroom 840
    Delaware Corporation, PIERSTONE       Judge:          Hon. Dale S. Fischer
22  GROUP, LLC, a New York Limited
    Liability Company, REGAL WALNUT       Complaint Filed:  November 27, 2013
23  LLC, a California Limited Liability    Amended Complaint Filed:  July 10, 2014
    Company, and JACK J. QIN, VISMAN
24  CHOW, NORMAN KO, WILLIAM
    SLUSS, PYNG SOON, GEORGE
25  CURRY, JOHN HUEMOELLER II,
    WALLAS GAIKAS, and PETER LAU,
26  individuals,

27              Defendants.

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

—————————————————————————————————
              MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 10, 2014 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 840 of the above-entitled court, located at 312 North Spring Street, Los Angeles, California, Defendants EFT Holdings, Inc., Visman Chow, Norman Ko, William Sluss, and Pyng Soon will and hereby do move for an order dismissing Plaintiffs' First Amended Complaint with prejudice pursuant to the Securities Litigation Uniform Standards Act of 1998, Private Securities Litigation Reform Act of 1995, and Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6). Plaintiffs' claims fail to state sufficient facts to constitute claims for relief and must be dismissed.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the [Proposed] Order filed concurrently herewith, the records and files in this action, and any other written or oral submissions that may be presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on September 17, 2014. Plaintiffs intend to oppose this Motion.

Dated: September 24, 2014

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: /s/ Neal R. Marder
Neal R. Marder
Ali R. Rabbani
Ian C. Eisner
Shawn R. Obi
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

*Attorneys for Defendants EFT Holdings, Inc.,*
*Visman Chow, Norman Ko, William Sluss, and*
*Pyng Soon*

1

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# <u>TABLE OF CONTENTS</u>

Page

I.   INTRODUCTION ............................................................................. 1

II.  STATEMENT OF RELEVANT ALLEGED FACTS ........................ 3

    A.   Plaintiffs and the EFT Defendants ................................ 3

    B.   The Complaint ................................................................ 4

        1.   EFT Allegedly Induces Investments in the Company
            Through "Defective" Products ........................... 4

        2.   Defendants Allegedly Pump and Dump EFT Shares ..... 5

        3.   Plaintiffs Allegedly Purchase EFT Shares .................... 6

        4.   EFT's Directors and Officers Allegedly Loot EFT as Part of
            the Purported Investment Fraud ........................ 7

III. STANDARD OF REVIEW ............................................................ 7

    A.   Legal Standard ............................................................... 7

IV.  ARGUMENT ................................................................................ 9

    A.   Plaintiffs' State Law Claims for Endless Chain Investment
        Scheme, Deception and Common Law Fraud, and Corporate Waste
        and Gift (Counts I-III) Are Preempted by SLUSA ................... 9

    B.   Plaintiffs' Corporate Waste and Gift Claim (Count III) Should
        Also Be Dismissed Because It Is Derivative in Nature and,
        Therefore, Must Be Brought on Behalf of EFT ..................... 12

    C.   Plaintiffs' RICO Claims (Counts IV–VII) Should Be Dismissed
        Because They Are Barred by the PSLRA ............................ 14

    D.   Plaintiffs' Allegations, As Alleged Against the D&O Defendants,
        Are Defective for Several Additional, Independent Reasons ......... 17

        1.   Plaintiffs' Endless Chain Scheme Claim Against the D&O
            Defendants Is Defective ................................. 17

        2.   Plaintiffs' Deficient Fraud Allegations Against the D&O
            Defendants Fail To Satisfy Rule 9(b) ..................... 18

        3.   Plaintiffs' Vague and Conclusory Allegations that the D&O
            Defendants Committed Corporate Waste and Gift Fail to
            Satisfy Both Rule 8 and Rule 9(b) ...................... 19

        4.   Plaintiffs' Deficient RICO Allegations Against the D&O
            Defendants ................................................ 21

V.   CONCLUSION ........................................................................... 22

i

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

CASES

4
5

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...................................................................................8

6
7

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.,*
  189 F.3d 321 (3d Cir. 1999) ..........................................................14, 15

8
9

*Barron v. Igolnikov,*
  2010 WL 882890 (S.D.N.Y. Mar. 10, 2010).....................................9, 11

10
11

*Bell Atl. v. Twombly,*
  550 U.S. 544 (2007)...................................................................7, 8, 18, 21

12
13

*Eagletech Commc'ns Inc. v. Citigroup, Inc.,*
  2008 WL 3166533 (S.D. Fla. June 27, 2008)...................................16

14
15

*Ebeid ex rel. U.S. v. Lungwitz,*
  616 F.3d 993 (9th Cir. 2010) ...............................................................8

16

*Edwards v. Marin Park, Inc.,*
  356 F.3d 1058 (9th Cir.2004) ........................................................8, 21

17
18

*Felton v. Morgan Stanley Dean Witter & Co.,*
  429 F. Supp. 2d 684 (S.D.N.Y. 2006) ................................................9

19
20

*Herbalife Int'l of Am., Inc. v. Ford,*
  No. CV-07-2529-GAF (FMOx), Slip Op. at *6 (C.D. Cal. May 5, 2010).....3, 17

21
22

*Howard v. Am. Online Inc.,*
  208 F.3d 741 (9th Cir. 2000) ........................................................3, 15

23
24

*In re Computer Sciences Corp. Derivative Litig.,*
  244 F.R.D. 580 (C.D. Cal. 2007)..................................................12, 13

25
26

*In re Merkin,*
  817 F. Supp. 2d 346 (S.D.N.Y. 2011) .......................................2, 9, 10

27

*In re Sagent Tech., Inc. Derivative Litig.,*
  278 F. Supp. 2d 1079 (N.D. Cal. 2003).......................................20, 21

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

ii

*In re Silicon Graphics, Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ............................................................... 12

*In re Verisign, Inc. Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ................................................ 12

*Instituto de Prevision Militar v. Merrill Lynch*,
    546 F.3d 1340 (11th Cir. 2008) ........................................................... 11

*ITI Internet Servs., Inc. v. Solana Capital Partners, Inc.*,
    2006 WL 1789029 (W.D. Wash. June 27, 2006) ............................... 16

*Kramer v. W. Pac. Indus., Inc.*,
    546 A.2d 348 (Del. 1988) ....................................................... 2, 13, 14

*Lazo v. Summit Mgmt. Co., LLC*,
    2014 WL 3362289 (E.D. Cal. July 9, 2014) ......................................... 8

*Levinson v. PSCC Servs., Inc.*,
    2009 WL 5184363 (D. Conn. 2009) ..................................................... 11

*Licht v. Watson*,
    2014 WL 2121219 (11th Cir. May 22, 2014) ..................................... 15

*Mandelbaum v. Fiserv, Inc.*,
    787 F. Supp. 2d 1226 (D. Colo. 2011) ............................................... 11

*McLeod v. DHI Mortgage Co.*,
    2009 WL 1396395 (S.D. Cal. May 15, 2009) ............................... 17, 18

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
    547 U.S. 71 (2006) ......................................................................... 9, 10

*Middlesex Ret. Sys. v. Quest Software Inc.*,
    527 F. Supp. 2d 1164 (N.D. Cal. 2003) ............................................... 19

*Minkler v. Apple, Inc.*,
    2014 WL 4100613 (N.D. Cal. Aug. 20, 2014) ..................................... 10

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
    651 F.3d 268 (2d Cir. 2011) ...................................................... 1, 14, 15

*Newman v. Family Mgmt. Corp.*,
    748 F. Supp. 2d 299 (S.D.N.Y. 2010) ............................................. 9, 11

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

iii

MOTION TO DISMISS FIRST AMENDED COMPLAINT

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Pineda v. Saxon Mortg. Services*,
    2008 WL 5187813 (C.D. Cal. Dec. 10, 2008).....................................................21

*Plumlee v. Pfizer, Inc.*,
    2014 WL 695024 (N.D. Cal. Aug. 29, 2014) ........................................................8

*Ring v. AXA Fin., Inc.*,
    483 F.3d 95 (2d Cir. 2007) ...................................................................................1

*S.E.C. v. Glenn W. Turner Enters., Inc.*,
    474 F.2d 476 (9th Cir. 1973) ..............................................................................15

*Schnorr v. Shubert*,
    2005 WL 2019878 (W.D. Okla. Aug. 18, 2005)..................................................11

*Swartz v. KPMG, LLC*,
    401 F. Supp. 2d 1146 (W.D. Wash. 2004), *aff'd*, 476 F.3d 756 (9th Cir.
    2007) ....................................................................................................................14

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ..........................................................2, 18, 19, 21

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004).................................................................12, 13, 14

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...............................................................................8

*Vohs v. Miller*,
    323 F. Supp. 2d 965 (D. Minn. 2004) ...................................................................2

**STATUTES**

15 U.S.C. § 77p(b) ..........................................................................................................9

15 U.S.C. § 78bb(f)(1) ....................................................................................................9

18 U.S.C. § 1964(c) ......................................................................................................14

Cal. Civ. Code § 1689.2..........................................................................................3, 17

Private Securities Litigation Reform Act of 1995 ("PSLRA") ........................passim

Racketeer Influenced and Corrupt Organizations Act ("RICO")....................passim

iv

MOTION TO DISMISS FIRST AMENDED COMPLAINT

Section 10(b) of the Securities Exchange Act of 1934............................................15

Securities Litigation Uniform Standards Act of 1998 ("SLUSA").................passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. § 8 ...............................................................................passim

Fed. R. Civ. P. § 9(b) .........................................................................passim

Fed. R. Civ. P. § 10b-5 ...........................................................................15

Fed. R. Civ. P. § 12(b)(6) .........................................................................1

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543

MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendants Visman Chow, Norman Ko, William Sluss, and Pyng Soon (collectively, the "D&O Defendants") and EFT Holdings, Inc. ("EFT" or the "Company") respectfully submit this memorandum of law in support of their motion, pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), for an order dismissing Plaintiffs' First Amended Complaint with prejudice.

## I.  INTRODUCTION

In an attempt to evade the PSLRA's heightened pleading requirements applicable to federal securities fraud class actions, Plaintiffs bring what is, at bottom, a federal securities fraud action under the guise of state law and the Racketeer Influenced and Corrupt Organizations Act ("RICO").  SLUSA and the PSLRA plainly forbid such "artful pleading."  *See MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 274 (2d Cir. 2011); *Ring v. AXA Fin., Inc.*, 483 F.3d 95, 97-98 (2d Cir. 2007).

Plaintiffs, purported China-based investors in EFT, allege that they were the victims of a fraudulent "investment scam" perpetrated by EFT, the D&O Defendants, and certain other persons and entities.  According to Plaintiffs, beginning in 2007, Defendants "conspired" to operate an elaborate "pump-and-dump" scheme whereby they would list EFT on the OTC Bulletin Board, manipulate the market demand, and "liquidate huge blocks of covertly-issued stocks."  (Compl. ¶ 7.)

Plaintiffs allege that, in order to induce Plaintiffs to purchase (and retain) EFT stock, Defendants made numerous material misstatements, including representations that EFT would "soon be listed for sale on the New York Stock Exchange" and that EFT shares would "soon double in value."  (*Id*. ¶ 94.)  Plaintiffs assert that, in reliance on these misrepresentations, they elected to invest in EFT by purchasing certain EFT products in return for shares in EFT.  (*Id*. ¶¶ 111-114.)  Plaintiffs purportedly later discovered that their shares were worthless and the products were "defective" and

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1

"impossible to resell." (*Id.* ¶¶ 59, 60, 115.)  Plaintiffs further allege that, as part of this "fraudulent scheme," Defendants funneled these investor funds "off the books" of EFT by engaging in insider transactions without board approval. (*Id.* ¶¶ 99, 101.)

Instead of suing Defendants under the federal securities laws for what Plaintiffs assert was a "fraudulent scheme" centered on an illegal "investment scam" (*id.* ¶ 2), Plaintiffs attempt to pursue state law claims against Defendants for (i) violation of California's Endless Chain Scheme Law; (ii) Deception and Common Law Fraud; and (iii) Corporate Waste and Gift.  Plaintiffs also allege that Defendants' purportedly fraudulent scheme violated the federal RICO statute.

Plaintiffs' Complaint is defective for a host of independent reasons:

*First*, because Plaintiffs' state law claims plainly concern or "coincide" with alleged misrepresentations made "in connection with the purchase or sale of securities," they are preempted by SLUSA.  *See Vohs v. Miller*, 323 F. Supp. 2d 965, 973 (D. Minn. 2004) ("SLUSA provides for the immediate dismissal of . . . class actions based on state law alleging an untrue statement of material fact made in connection with the purchase or sale of a covered security."); *In re Merkin*, 817 F. Supp. 2d 346, 359-60 (S.D.N.Y. 2011) (same).

*Second*, Plaintiffs' state law Corporate Waste and Gift claim should be dismissed on the additional and independent ground that it is derivative in nature and, therefore, must be brought on behalf of EFT itself.  *See Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 349-53 (Del. 1988) ("A claim of mismanagement resulting in corporate waste, if proven, represents a direct wrong to the corporation that is . . . entirely derivative in nature.")

*Third*, Plaintiffs' RICO claims are barred by the PSLRA, which not only eliminates securities fraud as a predicate offense in a civil RICO action, but also precludes Plaintiffs from attempting to plead other RICO predicate acts (such as mail or wire fraud, transferring stolen property, or money laundering) if such offenses are based on conduct that would have been actionable as securities fraud. *See Swartz v.*

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *Howard v. Am. Online Inc.*, 208 F.3d 741, 749-50 (9th Cir. 2000).

*Fourth*, in addition to the reasons set forth above, Plaintiffs' claims against the D&O Defendants should be dismissed on the independent ground that the Complaint's hopelessly vague and conclusory allegations against the D&O Defendants fail to satisfy even the notice pleading requirements under Rule 8 of the Federal Rules of Civil Procedure, let alone the heightened pleading requirements of Rule 9(b), which are applicable here given that Plaintiffs' claims are premised on Defendants' alleged "fraudulent" investment scheme. Indeed, based on Plaintiffs' own allegations, much of the alleged misconduct about which Plaintiffs now complain took place *before* the D&O Defendants even joined EFT.

*Finally*, Plaintiffs' state law Endless Chain Scheme allegations against the D&O Defendants should be dismissed on the additional and independent ground that the sole remedy permitted under the applicable statute is rescission of Plaintiffs' purported contracts with EFT. *See* Cal. Civ. Code § 1689.2; *Herbalife Int'l of Am., Inc. v. Ford*, No. CV-07-2529-GAF (FMOx), Slip Op. at *6 (C.D. Cal. May 5, 2010). Because Plaintiffs do not allege that the D&O Defendants were parties to these purported contracts, Plaintiffs cannot pursue this claim against the D&O Defendants.

For these reasons, discussed in more detail below, Plaintiffs' Complaint should be dismissed.

## II.   STATEMENT OF RELEVANT ALLEGED FACTS[1]

### A.   Plaintiffs and the EFT Defendants

Plaintiffs Shuxin Li, Haiyuan Zhao, Yu Hu, and Hongyan Liu reside in China. They purport to bring this action on behalf of those who purchased "EFT products in exchange for ownership interest in EFT." (*Id.* ¶ 13.)

---

[1] The D&O Defendants and EFT dispute the validity of the allegations set forth in Plaintiffs' Complaint. However, for purposes of this motion only, the allegations of the Complaint are taken as true.

3

MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant EFT is a publicly traded e-Commerce corporation organized under the laws of the State of Nevada with its principal place of business in the City of Industry, California. (Compl. ¶ 18.) EFT engages in the merchandising and sale of EFT-brand nutritional and personal care products to customers outside of the United States. Since late 2007, EFT has listed its stock on the OTC Bulletin Board. (*Id.* ¶ 7.)

Defendant Jack Qin founded EFT in 1998. (*Id.* ¶ 19.) He is the Company's Chief Executive Officer, President, and Chairman of the Board. (*Id.*) Messrs. Chow, Ko, and Soon purportedly joined EFT as members of its Board of Directors in July 2009. (*Id.* ¶¶ 20, 21, 23.) Mr. Sluss purportedly joined the Company in 2010 as its principal accounting and financial officer. (*Id.* ¶¶ 22, 155.)

### B.    The Complaint

Plaintiffs allege that Defendants "orchestrated a massive fraud" that "was centered on pushing an illegal endless chain investment scam" on Chinese investors who "relied upon the integrity of the U.S. market." (*Id.* ¶¶ 1-2.) According to Plaintiffs, EFT promised potential investors that by "joining the chain and investing in EFT, they could earn substantial rewards," including "owning part of the EFT business." (*Id.* ¶ 3.) Plaintiffs contend, however, that the "alleged ownership was illusory," as Defendants purportedly "transformed shell company penny stocks into dollar investments, tied these investments to purchases of defective products, and then looted these investments" out of the Company, all while "executing an elaborate pump-and-dump operation" to manipulate the market and "fraudulently reap[] huge profits." (*Id.* ¶¶ 4, 81.)

### 1.    EFT Allegedly Induces Investments in the Company Through "Defective" Products

Plaintiffs allege that, beginning in 2005, Mr. Qin held a series of public meetings during which he "espoused the benefits of EFT's [nutrition and personal care] products" and "represented that consumers who purchased the company's products would not only receive the products ordered, they would also receive

MOTION TO DISMISS FIRST AMENDED COMPLAINT

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

ownership interests in EFT, or a right to purchase the ownership interests in EFT, in the form of stock certificates which Qin represented as 'negotiable securities' that could be sold for money."  (*Id*. ¶¶ 82-83.)  Plaintiffs allege that Mr. Qin repeatedly represented that these shares would "soon be listed on the New York Stock Exchange." (*Id*. ¶¶ 94, 98, 138.)  The "number and value of shares issued or made available for purchase depended on the consumer level of products purchased." (*Id*.)

According to Plaintiffs, the EFT products "tied to" the purchase of EFT shares were "generally mislabeled or adulterated" and "overpriced," and "virtually impossible to profitably resell . . . in the retail marketplace." (*Id*. ¶¶ 3, 4, 45, 51, 52, 60.)  Plaintiffs further allege that because EFT permitted only registered EFT "affiliate investors" – or individuals sponsored by those affiliates – to purchase EFT products, "EFT's focus was on recruitment, and rewards paid in exchange for recruiting others rather than for simply selling products." (*Id*. ¶¶ 42, 62, 65.)  Plaintiffs contend that, despite "promis[ing] riches," Defendants intentionally failed to disclose that "affiliate investors ha[d] virtually no chance to actually profit by investing in EFT." (*Id*. ¶¶ 64-66.)

## 2.    Defendants Allegedly Pump and Dump EFT Shares

Beginning in 2007 – in what Plaintiffs characterize as the "pump-and-dump portion of Defendants' plan" (*id*. ¶ 11) – EFT and certain of its officers and directors allegedly conspired with defendant Buckman, Buckman, and Reid, Inc. ("Buckman") and certain related defendants to "list EFT on the OTC Bulletin Board through a reverse merger, manipulate the market demand, and simultaneously liquidate huge blocks of covertly-issued stock." (*Id*. ¶ 7.)

On November 18, 2007, EFT allegedly completed a reverse merger with EFT BioTech Holdings, Inc., "pursuant to which EFT acquired 100% of the issued and outstanding shares of EFT BioTech Holdings, Inc." (*Id*. ¶ 87.)  Plaintiffs further allege that EFT, Mr. Qin, George Curry, and certain other unnamed EFT officers and directors then caused 52,099,000 EFT shares to be issued to a shell company

MOTION TO DISMISS FIRST AMENDED COMPLAINT

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

purportedly controlled by Mr. Qin.  (*Id*. ¶ 89.)  EFT shares were also allegedly issued to certain persons and entities affiliated with Buckman.

Starting in January 2008, Buckman allegedly administered a Regulation S Offering (the "Offering") pursuant to which nearly 15 million EFT shares were purportedly sold to the Class Members at what Plaintiffs contend was a substantially higher price than "what was charged to various insiders less than two months prior." (*Id*. ¶ 91.)  Plaintiffs assert that, to "push this incredible valuation and perpetuate their Pump-and-Dump Scheme," certain Defendants "willfully distributed numerous material misrepresentations and concealed material facts."  (*Id*. ¶ 92.)  According to Plaintiffs, such misrepresentations and omissions included:

- Mr. Qin's purported statements in and after 2007 that "the [EFT] shares would soon be listed for sale on the New York Stock Exchange" and that an "EFT stock blowout" would occur.  (*Id*. ¶¶ 94, 117, 138.)

- Mr. Qin's alleged assertion, in April 2007, that "[w]e can make the value of shares double many times . . . ."  (*Id*. ¶ 94.)

- Mr. Qin's alleged misrepresentations in and after 2007 that "the value of [investors'] ownership interests in EFT would increase as more consumers purchased products."  (*Id*. ¶ 95.)

- An alleged representation appearing on EFT's website in January 2008 that "EFT had grown into a $782 billion business."  (*Id*. ¶ 93.)

### 3.    Plaintiffs Allegedly Purchase EFT Shares

At some unspecified time in or after January 2008, in purported reliance on Mr. Qin's "misrepresentations about the value and quality of EFT's products and investment opportunities in the company . . . ," Plaintiffs allegedly purchased EFT products in return for shares in EFT (or, with respect to certain Plaintiffs, the right to purchase EFT shares, which they then exercised).  (*Id*. ¶¶ 111-114.)

Plaintiffs allege that the value of their purported EFT shares ultimately fell from $3.80 per share at the time of purchase to "less than a penny."  (*Id*. ¶115.)  Plaintiffs contend that during this decline, Mr. Qin and EFT "repeatedly and willfully made

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

knowingly false claims for the purpose of inducing Plaintiffs and the Class members to forebear from trying to sell their proposed investments in EFT." (*Id*. ¶¶ 115-117.) Plaintiffs further allege that while Defendants were allegedly "pumping the market," Defendants intentionally concealed the "material fact" that Defendants "were liquidating their holdings" in the Company to purportedly enrich Mr. Qin and an entity that he allegedly controlled. (*Id*. ¶ 97.)

According to Plaintiffs, had Defendants "made truthful disclosures . . . instead of misrepresentations of material fact, . . . Plaintiffs and Class members would not have held their shares through the duration of Defendants' various schemes." (*Id*. ¶ 141.)

### 4. EFT's Directors and Officers Allegedly Loot EFT as Part of the Purported Investment Fraud

According to Plaintiffs, "[o]nce the investments from the Offering were on the books," EFT and certain other defendants "conspired" to funnel these investments "back off the books and into the pockets of insiders." (*Id*. ¶ 99.) Specifically, Plaintiffs allege that EFT and certain of its directors and officers engaged in "disguised" "insider transactions" (*id*. ¶¶ 12, 99) with (i) Wendy Qin, the sister of Mr. Qin (*id*. ¶¶ 100-105); (ii) Excalibur International Marine Corporation ("Excalibur") (*id*. ¶ 106); (iii) CTX Virtual Technologies, Inc. ("CTX") (*id*. ¶ 107); Meifu Development Co., Ltd. (*id*. ¶ 108); (iv) Yeuh-Chi Liu, a former vendor to EFT (*id*. ¶ 110); and (v) and unnamed general contractor (*id*. ¶ 110). Plaintiffs allege that EFT "received no consideration" for these transactions, which were purportedly made without "proper approval of the shareholders or board of directors." (*Id*. ¶¶ 99, 148.)

## III. STANDARD OF REVIEW

### A. Legal Standard

To survive a motion to dismiss under the general pleading standard, the factual allegations in a complaint must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S.

7

MOTION TO DISMISS FIRST AMENDED COMPLAINT

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, the court must "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). To satisfy the general pleading requirements of Rule 8, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556).

Because Plaintiffs' Complaint repeatedly characterizes Defendants' alleged misconduct as a "massive fraud" centered on pushing an "investment scam" (*see, e.g.*, Compl. ¶¶ 1-2),[2] it "sounds in fraud" and is, therefore, subject to even stricter pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure. *See Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir.2004). This is so even though certain of the claims at issue are not styled as "fraud" claims. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *5 (N.D. Cal. Aug. 29, 2014).

Rule 9(b) has long "require[d] a party to state with particularity the circumstances constituting fraud or mistake." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). To satisfy this exacting standard, the complaint must specify, among other things, the "who, what, when, where, and how of the misconduct charged." *Id.* "Rule 9(b) does not allow a plaintiff to merely lump multiple defendants together, but requires plaintiffs to inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Lazo v. Summit Mgmt. Co., LLC*, 2014 WL 3362289, at *15 (E.D. Cal. July 9, 2014) (citing *U.S. v. Corinthian Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011).

As demonstrated below, Plaintiffs' Complaint does not satisfy even the general

---

[2] Indeed, the words "fraud" and "intentional misrepresentation" (or variants thereof) appear in Plaintiffs' Complaint over *ninety* times.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

8

MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    pleading standard under Rule 8 with respect to the D&O Defendants, let alone the
2    heightened requirements of Rule 9(b) that are applicable here.

3    **IV.   ARGUMENT**

4        **A.   Plaintiffs' State Law Claims for Endless Chain Investment Scheme,**
5             **Deception and Common Law Fraud, and Corporate Waste and Gift**
6             **(Counts I-III) Are Preempted by SLUSA**

7        Plaintiffs' state law claims are preempted by SLUSA and should therefore be
8    dismissed.  SLUSA was enacted "to prevent class action plaintiffs from circumventing
9    the PSLRA's heightened pleading requirements through artful pleading."  *Newman v.*
10   *Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 311 (S.D.N.Y. 2010).  That is exactly what
11   Plaintiffs seek to do here.

12       SLUSA, which the Supreme Court has held should "be construed expansively,"
13   mandates dismissal of (i) a covered class action (i.e., an action in which "damages are
14   sought on behalf of more than [fifty] people"); (ii) based on state law; (iii) alleging a
15   material misrepresentation or omission (or conduct that "sounds in fraud"); (iv) in
16   connection with the purchase or sale of a covered security.  *See* 15 U.S.C.
17   §§ 78bb(f)(1), 77p(b); *Newman*, 748 F. Supp. 2d at 312; *Felton v. Morgan Stanley*
18   *Dean Witter & Co.*, 429 F. Supp. 2d 684, 690-91 (S.D.N.Y. 2006); *Merrill Lynch,*
19   *Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 83 (2006); *Barron v. Igolnikov*,
20   2010 WL 882890, at *3-5 (S.D.N.Y. Mar. 10, 2010).  Plaintiffs' state law claims meet
21   all four requirements for SLUSA preemption.

22       *First*, Plaintiffs purport to bring their claims on behalf of "tens of thousands" of
23   purchasers of "EFT products in exchange for ownership interest in EFT . . . ." (Compl.
24   ¶¶ 13, 121.)   This plainly satisfies SLUSA's "covered class action" requirement.
25   *Merkin*, 817 F. Supp. 2d at 359-60 n.13.

26       *Second*, Plaintiffs' claims for violation of California's Endless Chain Scheme
27   Law, Deception and Common Law Fraud, and Corporate Waste and Gift are all based
28   on state law.  (*See* Compl. ¶¶ 126-152.)

9

MOTION TO DISMISS FIRST AMENDED COMPLAINT

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*Third*, Plaintiffs expressly allege material misrepresentations and omissions or conduct "sounding in fraud" in connection with their state law claims. *See Merkin*, 817 F. Supp. 2d at 359 ("To trigger SLUSA, a complaint must allege either (1) an explicit claim of fraud or misrepresentation . . . or (2) other garden-variety state law claims that sound in fraud."); *Minkler v. Apple, Inc.*, 2014 WL 4100613, at *6 (N.D. Cal. Aug. 20, 2014) (a claim "sounds in fraud" when it is based on a "fraudulent course of conduct" designed to "mislead or otherwise deceive"). In addition to alleging an explicit state law fraud claim, Plaintiffs characterize Defendants' alleged misconduct underlying *all of their claims* as a "***massive fraud*** that siphoned millions of dollars from Plaintiffs and other similarly situated individuals . . . ." (Compl. ¶¶ 1, 159 ("Defendants engaged in a "*per se scheme to defraud*") (emphasis added).) Plaintiffs further allege that this purported "***fraudulent scheme*** was centered on pushing an illegal endless chain investment scam." (*Id.* ¶ 2 (emphasis added).) Indeed, as noted above, the words "fraud" and "intentional misrepresentation" (or variants thereof) appear in the Complaint over *ninety times*. (*See id. passim*.) Plaintiffs also purport to identify numerous alleged "intentional misrepresentations" and "omissions" in connection with their state law claims. (*See, e.g., id.* ¶¶ 8, 92, 93, 141; *see also* Section II.B.2 *supra*.) Plaintiffs' allegations thus satisfy SLUSA's "material misrepresentation" requirement. *See Merkin*, 817 F. Supp. 2d at 359.

*Fourth*, Defendants' purported "fraudulent investment scheme" is plainly "in connection with the purchase or sale of a covered security." 15 U.S.C. §§ 78bb(f)(1), 77p(b).[3] "SLUSA's 'in connection with' requirement is to be construed broadly." *Merkin*, 817 F. Supp. 2d at 360 (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85-86 (2006)). Indeed, the Supreme Court has held that it is "enough that the fraud alleged 'coincide' with a securities transaction . . . ." *Merrill*,

---

[3] "Under SLUSA, a 'covered security' includes any security that is listed or authorized for listing on the New York Stock Exchange or another national exchange, as well as securities issued by investment companies registered with the Securities Exchange Commission." *Merkin*, 817 F. Supp. 2d at 360.

10

MOTION TO DISMISS FIRST AMENDED COMPLAINT

547 U.S. at 85-86.

Here, Plaintiffs allege that, pursuant to Defendants' purported "investment scam," Plaintiffs were induced through various misrepresentations and omissions to purchase EFT shares listed on the OTC Bulletin Board in or after 2008 as part of the Offering. (Compl. ¶¶ 91-92, 111-114.)  Plaintiffs further allege that, from 2007 and continuing through 2010, Mr. Qin made knowing material misrepresentations by repeatedly "promising" EFT investors, including Plaintiffs, that their shares would "soon be listed on the *New York Stock Exchange*," causing them to "double in value." (*Id*. ¶¶ 94 (emphasis added), 98, 138(b).)  This satisfies SLUSA's "in connection with a covered security" requirement.  *See, e.g.*, *Levinson v. PSCC Servs., Inc.*, 2009 WL 5184363, at *11 (D. Conn. 2009) (holding that there was "no question" that Bernard Madoff's Ponzi scheme was "in connection with" the purchase and sale of "covered securities" where Madoff *promised* investors he would purchase securities in the Standard & Poor's 100 Index – even though "the trades never took place"); *Schnorr v. Shubert*, 2005 WL 2019878, at *5 (W.D. Okla. Aug. 18, 2005) (dismissing state law claims under SLUSA where defendant promised to invest putative class's money in nationally listed and traded securities but never actually executed any such trades); *Newman*, 748 F. Supp. 2d at 312-13 (dismissing state law claims under SLUSA because even though shares acquired through the defendant fund were not "covered securities," defendant's investment strategy contemplated the purchase and sale of "covered securities").[4]  Accordingly, Plaintiffs' state law claims should be dismissed

---

[4] *See also Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1246 (D. Colo. 2011) ("For SLUSA purposes, deception is deemed to have occurred 'in connection with the purchase or sale of any security' even if a security was not actually purchased, provided the plaintiff had submitted funds to the defendant with the understanding that such funds would be used to purchase securities."); *Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1352 (11th Cir. 2008) (under SLUSA, the controlling factor is "the product that was marketed to the investor, not what the defendant actually did with the investor's money"); *Barron*, 2010 WL 882890, at *5 ([I]n light of the Supreme Court's command that SLUSA be construed expansively, it is enough that this fraudulent scheme was in connection with the trading in the nationally listed securities in which [defendant] claimed to be engaged.  It is not essential that [defendant] actually performed any trades or acquired any securities.")

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  under SLUSA.

2  **B.    Plaintiffs' Corporate Waste and Gift Claim (Count III) Should Also**

3  **Be Dismissed Because It Is Derivative in Nature and, Therefore,**

4  **Must Be Brought on Behalf of EFT**

5  As established above, Plaintiffs' state law claim for Corporate Waste and Gift

6  (along with Plaintiffs' other state law claims) should be dismissed because it is

7  preempted under SLUSA.   It should also be dismissed on the additional and

8  independent ground that it constitutes a derivative claim that Plaintiffs lack standing to

9  assert.

10  It is a well-established principle of corporate law that the shareholders of a

11  corporation may not maintain an action in an individual capacity for injury to the

12  corporation, even if the value of their stock is impaired.   *In re Verisign, Inc.*

13  *Derivative Litig.*, 531 F. Supp. 2d 1173, 1188 (N.D. Cal. 2007).   Rather, such an

14  action "must be brought as a derivative action," whereby "a shareholder asserts on

15  behalf of a corporation a claim not belonging to the shareholder, but to the

16  corporation." *Id.*

17  To determine whether a claim is derivative or direct, courts apply a two-part

18  test examining: "(1) who suffered the alleged harm (the corporation or the suing

19  stockholders, individually); and (2) who would receive the benefit of any recovery or

20  other remedy (the corporation or the stockholders, individually)."   *Tooley v.*

21  *Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).[5]   For a

22  shareholder to have standing to bring a direct claim, his or her "claimed direct injury

23  must be *independent* of any alleged injury to the corporation." *Id.* at 1039 (emphasis

24  added).   Moreover, the shareholder "must demonstrate that the duty breached was

25

26  [5]   The issue of whether a claim is direct or derivative is governed by the law of the
state of incorporation – Nevada here.  *See In re Silicon Graphics, Inc. Sec. Litig.*, 183
27  F.3d 970, 989-90 (9th Cir. 1999).  Moreover, Nevada courts look to Delaware law for
guidance on issues of corporate law.  *See In re Computer Sciences Corp. Derivative*
28  *Litig.*, 244 F.R.D. 580, 585 (C.D. Cal. 2007) (citations omitted).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

owed to the [shareholder] and that he or she can prevail *without showing an injury to the corporation*." *Id.* (emphasis added). In determining the nature of the wrong alleged, "a court must look to the body of the complaint, not to the plaintiff's designation or stated intention." *Kramer*, 546 A.2d at 352 (internal quotations and citation omitted).

Here, Plaintiffs' Corporate Waste and Gift claim is premised on claims of alleged mismanagement resulting in waste of corporate assets and devaluation of EFT stock. Plaintiffs allege that EFT, Mr. Qin, and the D&O Defendants "looted" the Company through purported (i) "exorbitant insider consulting payments"; (ii) exorbitant insider rental or royalty payments; (iii) "insider 'loans' that were never collected"; and (iv) "insider 'investments' that met with disaster right before beginning to pay a return." (Compl. ¶ 99.) According to Plaintiffs, these alleged "insider" transactions were "carried out without following the necessary procedural safeguards," including obtaining shareholder and board approval. (*Id.*)

These are classic derivative claims because they represent allegedly *direct* injuries to the Company that are *indirectly* experienced by the Company's shareholders. Indeed, Delaware courts (to which Nevada courts frequently look in interpreting questions of Nevada corporate law[6]) have long recognized that claims of waste are derivative in nature. For example, in *Kramer*, a shareholder of Western Pacific filed a class action complaint against the company and two of its officers and directors, alleging that the individual defendants wasted corporate assets by diverting funds to themselves in the form of stock options and termination agreements and to third parties in the form of excessive fees and expense payments relating to a merger. 546 A.2d at 349-51. The Delaware Supreme Court affirmed dismissal, explaining that: "A claim of mismanagement resulting in corporate waste, if proven, represents a direct wrong to the corporation that is indirectly experienced by all shareholders. Any

---

[6] *See, e.g., Computer Sciences Corp.*, 244 F.R.D. at 585 (citations omitted) ("Nevada courts look to Delaware law for guidance on issues of corporate law.").

1   devaluation of stock is shared collectively by all the shareholders, rather than
2   independently by the plaintiff or any other individual shareholder.  Thus, the wrong
3   alleged is entirely derivative in nature."  *Id.*; *see also Tooley*, 845 A.2d at 1038 ("The
4   claim in *Kramer* was essentially for mismanagement of corporate assets.  Therefore,
5   we found the claims to be derivative.  That was the correct outcome.").

6       Accordingly, Plaintiffs' Corporate Waste and Gift claim should be dismissed
7   for the additional and independent reason that this claim belongs to EFT, not
8   Plaintiffs.

9   **C.    Plaintiffs' RICO Claims (Counts IV–VII) Should Be Dismissed**
10  **Because They Are Barred by the PSLRA**

11      Plaintiffs' RICO claims should also be dismissed because the PSLRA expressly
12  prohibits RICO claims based on conduct that would otherwise be actionable as
13  securities fraud.  *See* 18 U.S.C. § 1964(c).

14      Section 107 of the PSLRA, which was enacted as an amendment to the RICO
15  statute, provides that "[n]o person may rely upon any conduct that would have been
16  actionable as fraud in the purchase or sale of securities to establish a violation of
17  section 1962."[7]  18 U.S.C. § 1964(c).  This rule that a plaintiff cannot assert a RICO
18  claim based on predicate acts that sound in securities fraud applies even where, as
19  here, the claim is pled as other RICO predicate acts, such as mail or wire fraud,
20  transferring stolen property, or money laundering.  *See Swartz v. KPMG, LLC*, 401 F.
21  Supp. 2d 1146, 1151 (W.D. Wash. 2004), *aff'd*, 476 F.3d 756, 760-761 (9th Cir. 2007)
22  (citation omitted); *see also Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d
23  321, 327 (3d Cir. 1999) (citation omitted) (noting that the legislative history for the
24  RICO amendment reveals that Congress intended not only to eliminate securities
25  fraud as a predicate offense in a civil RICO action, but also "to prevent a plaintiff

---

[7] Prior to the PSLRA amendment to the RICO statute, a plaintiff could allege a private
26  civil RICO claim for securities law violations sounding in fraud because "fraud in the
27  sale of securities" was listed as a predicate offense.  *MLSMK Inv. Co.*, 651 F.3d 268 at
28  274 (citation omitted).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

14

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

from plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts . . . if such offenses are based on conduct that would have been actionable as securities fraud.").[8]  The purpose of this rule is "to prevent litigants from using artful pleading to boot-strap securities fraud cases into RICO cases, with their threat of treble damages."  *MLSMK Inv. Co.*, 651 F.3d at 274 (citations omitted); *see also Bald Eagle Area Sch. Dist.*, 189 F.3d at 327 (explaining that the RICO amendment was intended to "completely eliminat[e] the so-called treble damages blunderbuss of RICO in securities fraud cases").

Here, Plaintiffs' RICO claims fall squarely within the PSLRA exclusion because they are based on alleged conduct that would otherwise be actionable as securities fraud.  As discussed in greater detail in the sections above, the gravamen of Plaintiffs' Complaint is that Defendants conspired to operate elaborate "endless chain," "pump-and-dump," and "corporate looting" schemes whereby Plaintiffs were induced through various misrepresentations and omissions to purchase EFT products in exchange for shares of EFT stock, which ultimately declined in value from $3.80 per share at the time of purchase to "less than a penny."  (*Id.* ¶¶ 115, 139.)  Such allegations are quintessential securities fraud claims under Section 10(b) of the Securities Exchange Act of 1934, Rule 10b-5 promulgated thereunder, and other provisions of the securities laws.  *See, e.g.*, *Howard*, 208 F.3d at 749-50 (holding that the PSLRA barred a RICO claim based on allegations that the defendant misrepresented revenues, profits, and number of subscribers, used improper accounting practices, and illegally sold stock at a profit); *S.E.C. v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 (9th Cir. 1973) (holding that investments in a pyramid scheme were "investment contracts" and thus securities under the Securities Act of 1933 and the Securities Exchange Act of 1934); *Licht v. Watson*, 2014 WL 2121219,

---

[8]  In fact, the rule excluding RICO claims based on predicate acts that sound in securities fraud applies even "where a plaintiff cannot itself pursue a securities fraud action against the defendant."  *MLSMK Inv. Co.*, 651 F.3d at 277.

MOTION TO DISMISS FIRST AMENDED COMPLAINT

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  at *3-4 (11th Cir. May 22, 2014) (holding that RICO claims based on an alleged

2  "pump-and-dump" scheme were barred by the PSLRA); *Eagletech Commc'ns Inc. v.*

3  *Citigroup, Inc.*, 2008 WL 3166533, at *8 (S.D. Fla. June 27, 2008) (holding that the

4  PSLRA precluded RICO claims "replete with allegations of stock manipulation"); *ITI*

5  *Internet Servs., Inc. v. Solana Capital Partners, Inc.*, 2006 WL 1789029, at *8 (W.D.

6  Wash. June 27, 2006) (holding that the PSLRA barred RICO claims based on, among

7  other things, an alleged "pump and dump" scheme).

8          Moreover, Plaintiffs' attempts to dress up these securities fraud claims as other

9  predicate acts under the RICO statute are unavailing.  For instance, in addition to

10  being based on the alleged endless chain, pump-and-dump, and corporate looting

11  schemes, Plaintiffs' "mail or wire fraud" claim alleges conduct that sounds in

12  securities fraud.  (*See, e.g.*, Compl. ¶¶ 172 ("Defendants encouraged EFT investment

13  checks to be sent by mail or wire and accepted and received the same by mail and

14  wire."), 175(B), (C) (alleging purported class members placed checks in the mail in

15  exchange for shares of ownership in EFT), 177 ("Each investment in EFT securities

16  that Plaintiffs and Class members made necessitated the use of bank wires or the

17  mails.").)  Likewise, Plaintiffs' "transferring stolen property" and "money laundering"

18  claims are based on express allegations of securities fraud.  (*See, e.g.*, Compl.

19  ¶¶ 187(C) ("each transfer of securities and each acceptance of securities performed by

20  Defendants . . . was done with knowledge that the securities were originally obtained

21  with fraud and thus constitute predicate acts of transferring stolen property"), 193(A),

22  (B), (C) (alleging that transfers of funds acquired through the purported endless chain,

23  pump-and-dump, and corporate looting schemes were "made in an attempt to avoid . .

24  . Federal and State reporting requirements"), 193(C) ("Defendants further evaded

25  reporting requirements concerning the transfers of shares so as to . . . conceal the

26  active operation of the Pump-and-Dump Scheme and numerous transfers of securities

27  that were issued to insiders for virtually no consideration within the months before the

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

16

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    purported EFT Regulation S Offering.").)[9]

2         Accordingly, Plaintiffs' RICO causes of action should be dismissed with

3    prejudice because they are barred by the PSLRA.

4         **D.    Plaintiffs' Allegations, As Alleged Against the D&O Defendants, Are**

5              **Defective for Several Additional, Independent Reasons**

6         Plaintiffs' claims against EFT and the D&O Defendants should be dismissed for

7    the reasons set forth above.  Moreover, Plaintiffs' claims, as alleged against the D&O

8    Defendants, should be dismissed on several additional, independent grounds.

9         **1.    Plaintiffs' Endless Chain Scheme Claim Against the D&O**

10              **Defendants Is Defective**

11        The sole remedy permitted under the California's Endless Chain Scheme statute

12   is rescission (and related discretionary attorneys' fees).  Cal. Civ. Code § 1689.2[10];

13   *Herbalife*, No. CV 07-2529, Slip. Op. at *6. Here, Plaintiffs assert that, at some

14   unspecified time in or after January 2008, they allegedly purchased EFT products in

15   return for shares in EFT (or, with respect to certain Plaintiffs, the right to purchase

16   EFT shares, which they then exercised). (*See* Compl. ¶¶ 111-114.) Because Plaintiffs

17   do not allege that the D&O Defendants were parties to the investment contracts that

18   Plaintiffs now seek to rescind, Plaintiffs are precluded from pursuing their Endless

19   Chain Scheme claim against the D&O Defendants.  *See McLeod v. DHI Mortgage*

20   *Co.*, 2009 WL 1396395, at *6 (S.D. Cal. May 15, 2009) (holding that a party seeking

21   ———————————————
     [9] To the extent Plaintiffs contend that the alleged "corporate looting" scheme does not
22   constitute actionable securities fraud, Plaintiffs do not, in any event, have standing to
     assert a RICO claim on this basis because it is derivative in nature.  As discussed in
23   Section IV.B above, Plaintiffs' allegations of corporate looting are classic derivative
     claims.
24   [10] Cal. Civ. Code § 1689.2 provides that:

25
         A participant in an endless chain scheme, as defined in Section 327 of the Penal
26       Code, may rescind the contract upon which the scheme is based, and may
         recover all consideration paid pursuant to the scheme, less any amounts paid or
27       consideration provided to the participant pursuant to the scheme. In addition,
         the court may, upon motion, award reasonable attorney's fees to a prevailing
28       plaintiff.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  to rescind a contract may "bring[] an action to recover any money or thing owing to

2  him *by any other party to the contract* as a consequence of such rescission") (citing

3  Cal. Civ. Code § 1692(a)) (emphasis added).

4       Moreover, based on Plaintiffs' allegations, Messrs. Chow, Ko, and Soon did not

5  join EFT's board until *July 2009* and Mr. Sluss did not begin working at the Company

6  until *2010*. (*Id*. ¶¶ 20-21, 23, 159.) It is, therefore, not even clear from Plaintiffs'

7  allegations that the D&O Defendants *had joined EFT* by the time Plaintiffs had

8  allegedly been damaged by entering into their purported contracts with EFT. Nor do

9  Plaintiffs otherwise allege any facts indicating that Mssrs. Chow, Ko, Soon, and Sluss

10  had any involvement in the purported Endless Chain Scheme. (*See*, generally, *id*.)

11  Indeed, Plaintiffs' Complaint fails to expressly identify any of the D&O Defendants in

12  connection with Plaintiffs' Endless Chain Scheme claim. (*See* Compl. ¶¶42-80.)

13       Accordingly, even assuming Plaintiffs' Endless Chain Scheme claim against the

14  D&O Defendants is not barred as a matter of law (and, for the reasons discussed

15  above, it plainly is), Plaintiffs' threadbare allegations against the D&O Defendants fail

16  to satisfy the general pleading standard under Rule 8, let alone the heightened

17  pleading strictures under Rule 9(b) applicable here. *See Twombly*, 550 U.S. at 556;

18  *Swartz,* 476 F.3d at 764.

19       **2.**    **Plaintiffs' Deficient Fraud Allegations Against the D&O**

20            **Defendants Fail To Satisfy Rule 9(b)**

21       Like Plaintiffs' Endless Chain Scheme claim, Plaintiffs' Deception and

22  Common Law Fraud claim against the D&O Defendants, in addition to being barred

23  by SLUSA, fails to satisfy the exacting pleading standards of Rule 9(b). Specifically,

24  Plaintiffs fail to plead any specific alleged misstatements or omissions made by

25  Messrs. Chow, Ko, Sluss, and Soon – nor explain how these individuals were in any

26  way responsible for, or even aware of, any alleged misstatements or omissions made

27  by Mr. Qin or the other Defendants. (*See*, *e.g.*, Compl. ¶¶ 81, 92-98, 134-138.)

28       While Plaintiffs do allege, in purely conclusory fashion, that certain unnamed

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

18

MOTION TO DISMISS FIRST AMENDED COMPLAINT

"EFT directors and officers were responsible for a statement purportedly appearing on EFT's website in *January 2008* that "EFT had grown into a $782 billion business" (*id*. ¶ 93), this allegation gets Plaintiffs nowhere.  This is because, as noted above, Plaintiffs allege that Messrs. Chow, Ko, and Soon did not join the board until *July 2009* and that Mr. Sluss did not join the Company until *2010 – well after* the alleged misrepresentation was made.  (*Id.* ¶ 159.)  *See Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1191 (N.D. Cal. 2003) (dismissing securities fraud claim against officer who joined company a year and a half after stock options were improperly backdated).

Lacking any concrete allegations against each of the D&O Defendants, Plaintiffs resort to "lumping" them in with the other Defendants in a transparent attempt to prop up their fraud claim against the D&O Defendants.  (*See*, generally, *id.*)  Indeed, Plaintiffs' Complaint fails to expressly identify any of the D&O Defendants in connection with Plaintiffs' fraud claim. (*See id*. ¶¶ 81, 92-98, 134-138.)  This tactic does not come close to satisfying Rule 9(b)'s heightened pleading requirements.  *See Swartz*, 476 F.3d at 764 (to satisfy Rule 9(b), a plaintiff must "differentiate [his] allegations when suing more than one defendant").

**3.**     **Plaintiffs' Vague and Conclusory Allegations that the D&O Defendants Committed Corporate Waste and Gift Fail to Satisfy Both Rule 8 and Rule 9(b)**

Plaintiffs' Corporate Waste and Gift claim, in addition to being (i) barred by SLUSA, and (ii) a derivative claim that Plaintiffs lack standing to assert, should also be dismissed with respect to the D&O Defendants because it fails to satisfy the heightened pleading standards of Rule 9(b) or even the general notice pleading requirements of Rule 8.

Plaintiffs allege that, as part of Defendants' purported "scheme to defraud," Defendants secretly "conspired" to "funnel [EFT] investments back off the books and into the pockets of insiders" through a series of "insider" transactions that Defendants

MOTION TO DISMISS FIRST AMENDED COMPLAINT

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

intentionally concealed from EFT shareholders. (Compl. ¶ 99.)   According to Plaintiffs, these transactions were carried out "without obtaining proper approval of the shareholders or the board of directors . . . ." (*Id.*)

Consistent with their other defective claims, Plaintiffs fail to allege facts demonstrating that the D&O Defendants were even aware of these purported "secret" insider transactions, let alone that they approved, were participants in, or benefitted from the purported "corporate looting."   (*See id.* ¶¶ 99-108.)   In fact, Plaintiffs' allegations, if anything, suggest that the D&O Defendants were *unaware* of the purported insider transactions, as Plaintiffs allege that these transactions were "carried out behind closed doors" and without "obtaining proper approval . . . of the board of directors." (*Id.* ¶ 99.)

Tellingly, Plaintiffs only expressly identify one D&O Defendant – Mr. Soon – in connection with their Corporate Waste and Gift claim, and they do so with respect to only one of the purportedly improper transactions.   But the particular transaction at issue – EFT's purported purchase of an interest in Excalibur – allegedly occurred in 2008, nearly a year *before* Plaintiffs allege that Mr. Soon, Mr. Chow, and Mr. Ko joined EFT's board and over a year before Plaintiffs allege that Mr. Sluss joined the Company. (*See id.* ¶¶ 19-21, 23, 106, 159.)[11]   *See In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1093 (N.D. Cal. 2003) (dismissing allegations of corporate waste and misconduct where the complaint failed to allege facts indicating how the individual defendants could be liable for events that occurred before they joined the company).   While Plaintiffs allege that Mr. Soon is currently Excalibur's CEO, they do not allege that Mr. Soon was the CEO at the time of EFT's allegedly

---

[11]   Plaintiffs also allege that the Yeuh-Chi Liu transaction occurred in July 2008, before Messrs. Chow, Ko, Sluss, and Soon are alleged to have joined EFT. (*Id.* ¶109.) Further, it is unclear, at best, whether Mssrs. Chow, Ko, and Soon were at the Company when, on some unspecified date in 2009, EFT allegedly entered into the water manufacturing plant transaction.   (*See id.* ¶110.)   Mr. Sluss, who allegedly joined the Company in 2010, plainly was not.   (*See id.*)   Further, it is unclear whether Mr. Sluss had joined the Company when, according to Plaintiffs, EFT allegedly entered into the CTX transaction in July 2010.   (*See id.* ¶107.)

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

20
MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   improper transaction with Excalibur. (Compl. ¶ 106.)  Further, even if Plaintiffs had

2   made such an allegation, they do not bother to explain how Mr. Soon could have

3   possibly committed corporate waste with respect to EFT while operating as an officer

4   of another company.  (*Id*.)

5        Accordingly, the Complaint's allegations against the D&O Defendants

6   underlying Plaintiffs' Corporate Waste and Gift claim fail to satisfy even the general

7   pleading requirements of Rule 8, let alone the heighted pleading requirements of rule

8   9(b) applicable here.  *See Twombly*, 550 U.S. at 556; *see Swartz*, 476 F.3d at 764.

9        **4.    Plaintiffs' Deficient RICO Allegations Against the D&O**

10            **Defendants**

11       Even assuming Plaintiffs' RICO claims are not barred by the PSLRA (and, for

12   the reasons set forth above, they are), these claims are nonetheless deficient as alleged

13   against the D&O Defendants.  The case law is clear that a plaintiff alleging predicate

14   acts sounding in fraud as part of a RICO claim (as Plaintiffs do here), must plead such

15   facts with particularity pursuant to Rule 9(b).  *See Edwards*, 356 F.3d at 1065-66;

16   *Pineda v. Saxon Mortg. Services*, 2008 WL 5187813, at *4 (C.D. Cal. Dec. 10, 2008)

17   ("It is not enough for [plaintiff] to rely on mere labels and conclusions" to establish a

18   RICO claim but rather, plaintiff must give each defendant notice of the particular

19   predicate act it participated in and must allege each predicate act with specificity.)

20   Here, Plaintiffs allege "predicate acts" that are based on the same purported

21   misconduct by the D&O Defendants on which Plaintiffs' Endless Chain Scheme Law,

22   Deception and Common Law Fraud, Corporate Waste and Gift claims are based.  (*See*

23   Compl. ¶¶ 169-198, 201-203, 207-210, 213.)  Because, as established above,

24   Plaintiffs' vague and conclusory allegations against the D&O Defendants in

25   connection with these state law claims fail to satisfy Rule 9(b), Plaintiffs' RICO

26   allegations against the D&O Defendants are likewise deficient under Rule 9(b).

27

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' First Amended Complaint with prejudice.

Dated:  September 24, 2014          Respectfully submitted,

**WINSTON & STRAWN LLP**

By: /s/ Neal R. Marder
Neal R. Marder
Ali R. Rabbani
Ian C. Eisner
Shawn R. Obi
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

*Attorneys for Defendants EFT Holdings, Inc., Visman Chow, Norman Ko, William Sluss, and Pyng Soon*