Suzelle M. Smith, Bar No. 113992
SSmith@howarth-smith.com
Don Howarth, Bar No. 53783
DHowarth@howarth-smith.com
Padraic Glaspy, Bar No. 259563
PGlaspy@howarth-smith.com
Jessica C. Walsh, Bar No. 276543
JWalsh@howarth-smith.com
HOWARTH & SMITH
523 West Sixth Street, Suite 728
Los Angeles, CA 90014
Telephone:  213.955.9400
Facsimile:   213.622.0791

Stephen Tuggy, Bar No. 120416
STuggy@lockelord.com
Ira Greenberg (Admitted pro hac vice)
Ira.Greenberg@lockelord.com
LOCKE LORD LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071
Telephone:  213.485.1500
Facsimile:   213.485.1200

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHUXIN LI, *et al.*,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>EFT HOLDINGS, INC., *et al.*,<br><br>　　　　　Defendants. | Consolidated Case No.  2:13-cv-08832-DSF-CWx<br>*consolidated with*  Case No. 2:13-cv-08835-DSF-CWx<br><br>Related Case: 2:15-CV-00727-DSF-CWx<br><br>Assigned to: Hon. Dale S. Fischer |
| SHUXIN LI, *et al.*,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>EFT HOLDINGS, INC., *et al.*,<br><br>　　　　　Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANT BUCKMAN, BUCKMAN & REID'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Action Filed:  November 27, 2013<br>Trial Date:    October 20, 2015<br><br>Hearing Date: April 6, 2015<br>Time: 1:30 p.m.<br>Courtroom: 840 |

**TABLE OF CONTENTS**

**PAGE(S)**

I. INTRODUCTION ................................................................................................ 1

II. PROCEDURAL HISTORY AND PRIOR MOTION
TO DISMISS ...................................................................................................... 1

III. PLAINTIFFS HAVE PROPERLY PLEAD THEIR CAUSE
OF ACTION PURSUANT TO CALIFORNIA'S ENDLESS
CHAIN LAW ...................................................................................................... 3

    A. Plaintiffs Have Met the Requirements of FRCP 9(b) ................. 3

    B. Plaintiffs Have Met The Requirements of FRCP 8 .................... 5

    C. Plaintiffs Have Met The Requirements Of FRCP 12(b)6 .......... 6

IV. PLAINTIFFS PROPERLY PLEAD THEIR RICO CAUSE
OF ACTION PURSUANT TO 18 USC § 1962 ................................................ 7

    A. The PSLRA Does Not Apply To RICO Claims Predicated
On The Endless Chain Allegations ............................................. 7

    B. Participating In The Endless Chain Does Not Constitute
The Purchase of Securities ........................................................ 10

    C. Plaintiffs' SAC does not state RICO Claims based on Pump
and Dump Scheme ..................................................................... 11

    D. Plaintiffs have properly Plead Defendant BBR's Predicate
Acts of Transferring Stolen Property with Sufficient
Particularity ................................................................................ 11

V. CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................. 5

*Bell v. Health-Mor*,
  549 F.2d 342 (5th Cir. 1977) .................................................................... 9

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) .................................................................. 3

*de Vries v. Brumback*,
  53 Cal.2d 643 (Cal. 1960) ..................................................................... 6, 7

*Favila v. Katten Muchin Rosenman LLP*,
  188 Cal. App. 4th 189 (2010) ................................................................... 7

*Landreth Timber Co. v. Landreth*,
  471 U.S. 681, 105 S. Ct. 2297, 85 L. Ed. 2d 692 (1985) ........................ 11

*Piambino v. Bailey*,
  610 F.2d 1306 (5th Cir. 1980) .................................................................. 9

*SEC v. Galaxy Foods, Inc.*,
  556 F.2d 559 (2nd Cir. 1977) ................................................................... 9

*SEC v. Glenn W. Turner Enterprises, Inc.*,
  474 F.2d 476 (9th Cir. 1973) ............................................................. 7, 8, 9

*SEC v. Koscot Interplanetary, Inc.*,
  497 F.2d 473 (5th Cir. 1974) ................................................................. 8, 9

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1945) .......................................................................... 7, 8, 9

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ................................................................ 3, 12

*Snelson v. Ondulando Highlands Corp.*,
  5 Cal. App. 3d 243 (1970) ........................................................................ 7

*Tullis v. Title Guarantee & Trust Co.*,
  11 Cal. App. 2d 391 (1936) ...................................................................... 7

*United Hous. Found., Inc. v. Forman*,
  421 U.S. 837, (1975) ............................................................................... 11

**STATUTES**
California Civil Code § 1689.2 .................................................................. 5, 6, 7

California Penal Code § 327 ........................................................................ 4, 5

Cal. Central Dist. Local Rule 23-3 ................................................................................................. 10

Fed. R. Civ. P. 8 .................................................................................................................................5

Fed. R. Civ. P. 9(b) ..................................................................................................................passim

HOWARTH & SMITH
ATTORNEYS AT LAW
LOS ANGELES

## I. INTRODUCTION

Plaintiffs have filed a second amended endless chain complaint (the "SAC") alleging endless chain and RICO violations based upon violations of California's endless chain statutes and common law fraud. Dkt. No. 132. Defendant Buckman, Buckman & Reid, Inc. ("BBR") has moved to dismiss. Dkt. No. 138. (the "Motion")

BBR's Motion is based on three arguments:

1. "Plaintiffs have failed to properly plead their endless chain scheme claim against BBR in accordance with Rule 8... [and] Rule 9(b) of the Federal Rules of Civil Procedure" Dkt. No. 138 at 2,5;

2. "Plaintiffs' endless chain scheme fail[s] to state a claim upon which relief can be granted [pursuant to FRCP 12(b)(6)]" because "Plaintiffs never entered into any contract with BBR, nor paid any consideration to BBR pursuant to the alleged endless chain scheme." Dkt. No. 138 at 7-8, 10; and

3. That "Plaintiffs' RICO claims ... are barred by the PSLRA ... [and] Plaintiffs have failed to plead the alleged predicate acts of racketeering with sufficient particularity." Dkt. No 138 at 11, 15-16.

BBR's arguments fail. Plaintiffs have properly pleaded BBR's participation in the endless chain scheme, including BBR's participation in and benefit from the endless chain scheme and BBR's predicate act of transferring stolen property. And Plaintiffs' RICO claims are not barred by the PSLRA because they are not a securities claim. BBR's Motion should be denied.

## II. PROCEDURAL HISTORY AND PRIOR MOTION TO DISMISS

Plaintiffs described three schemes in their first amended endless chain complaint: endless chain, pump-and-dump, and corporate looting. Dkt. No. 25 ¶¶42-110. Based upon these, Plaintiffs brought three core claims: violations of California's endless chain statutes, common law fraud, and corporate waste. Dkt. No. 25 at ¶¶126-52. Plaintiffs also brought claims alleging a RICO conspiracy, citing the three core claims as predicate acts. Dkt. No. 25 ¶¶153-215. Additionally, Plaintiffs alleged

predicate acts of mail and wire fraud, transferring stolen property, and money laundering. *Id*.

This Court heard several motions to dismiss the first amended complaint. Dkt. Nos. 35, 36, 52, 93, 109. With the exception of the corporate waste claims, this Court preserved all the core claims, either in whole or in part. Dkt. No. 120.[1] Notably, this Court maintained the RICO claims insofar as they were based on the endless chain scheme or on predicate acts of mail and wire fraud, transferring stolen property, or money laundering, and dismissed insofar as they were based on the corporate waste claims or on pump-and-dump allegations. Dkt. No. 120 ("[T]he RICO claims are dismissed to the extent that they encompass the Pump-and-Dump Scheme allegations and the Corporate Looting Scheme allegations, but not dismissed to the extent that they are predicated on the endless chain allegations."). This Court also maintained the endless chain allegations: "[t]he motions to dismiss the endless chain claims against the non-EFT Holdings Defendants are denied. The Court is not convinced that recession is the only remedy under the endless chain statute...Defendants have failed to make any compelling argument that recovery of 'all consideration paid pursuant to the scheme' can only be had from the person or entity that was the counterparty to the illegal contract and not from the insiders whom ill-gotten gains may have been distributed." Dkt. No. 120 at 3.

Accordingly, in their Second Amended Endless Chain Complaint, Plaintiffs removed all claims based on corporate waste. Dkt. Co. 132. Plaintiffs also added allegations to provide further detail as to the claims based on the endless chain and common law fraud counts, but otherwise changed little of the non-RICO allegations. Dkt. No. 132 ¶¶ 1-113. Finally, Plaintiffs removed corporate waste and pump-and-dump claims as predicate acts for Plaintiffs' RICO claims. Dkt. No. 132, ¶¶ 114-81.

---

[1] This Court's Order dismissed the RICO claims "to the extent that they encompass the Pump-and-Dump Scheme allegations and the Corporate Looting Scheme allegations, but not dismissed to the extent that they are predicated on the endless chain allegations." Dkt. No. 120 at 3. This Court further stated that "the corporate waste claim is dismissed." *Id*.

BBR's Motion aims to dismiss the endless chain and RICO claims of the SAC. They base their Motion largely on alleging Plaintiffs' have failed to meet the standard required by Rule 9(b). BBR's Motion lacks merit and should be denied.

## III. PLAINTIFFS HAVE PROPERLY PLEAD THEIR CAUSE OF ACTION PURSUANT TO CALIFORNIA'S ENDLESS CHAIN LAW

### A. Plaintiffs Have Met the Requirements of FRCP 9(b)

Rule 9(b) requires that allegations be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotations omitted). Under Rule 9, stating the "time, place, and nature of the alleged fraudulent activities ... is sufficient." *Semegen v. Weidner*, 780 F.2d 727, 735 (9th Cir. 1985). Here, BBR repeats its arguments from its motion to dismiss the first amended complaint, citing the same cases for their assertion that Plaintiffs have failed to satisfy FRCP Rule 9(b) and that "Plaintiffs [have failed] to 'state with particularity the circumstances constituting fraud or mistake'" Dkt. 138 at 6; Dkt. 52 at 15. BBR is again wrong, as Plaintiffs clearly plead the time, place, and nature of BBR's fraudulent activities. *See Semegen v. Weidner*, 780 F.2d at 735.

Here, Plaintiffs allege a time and place: "[i]n or about April of 2008," BBR "created a Private Placement Memorandum which concealed numerous material facts and misrepresented others." Dkt. No. 132 ¶ 83. Plaintiffs also detail the nature of these misrepresentations, alleging that BBR:

- "falsely stated that EFT 'make[s] no claims as to the products curing any medical situation, or preventing any medical ailment,' despite its authors' knowledge of the dozens of medical claims littering EFT's product advertisements." *Id.*

///
///

- "falsely stated that '[t]here are no relationships existing among and between the issuer's officers and directors,' despite the known relationship between Qin and his mistress Jun Qin Liu." *Id*.
- falsely stated "that [BBR] would only be entitled to a 5% commission and 1% expense allowance without disclosing the millions of shares of ownership that had or would be distributed among the Buckman Team and their respective Shell Companies for virtually no consideration." *Id*.
- falsely stated "that shares would be offered 'exclusively to non-U.S. residents' while actually offering and accepting share purchases from both U.S. residents and non-residents." *Id*.
- represented "that the stock was trading on the Pink Sheets at $6.85 per share without disclosing that [BBR], along with Greenstone, the Buckman Team, Qin [and] the Shell Companies, had manipulated this price and corresponding Pink Sheet quotations through insider back-and-forth trading." *Id*.

Plaintiffs also allege that "[t]he effect of Defendants' misrepresentations and omissions was increased demand for the 'shares' of EFT. This drove Plaintiffs and others to purchase more products in the endless chain scheme." *Id*. ¶ 86.

Yet Defendants argue that Rule 9(b) has not been satisfied. They claim "Plaintiffs do not allege that BBR made any specific misrepresentations of any kind, let alone misrepresentations which could be seen as 'increasing demand for the endless chain scheme and thereby increasing participation therein.'" Dkt. No. 138 at 7 (citing to Dkt. No. 132 ¶ 98). As outlined above, however, Plaintiffs allege the time, place, and nature of several specific misrepresentations and omissions in just the private placement memorandum, all of which can easily be seen as increasing demand for the endless chain scheme. In the face of these allegations, Defendants' argument has no merit.

Defendants also repeatedly cite to California Penal Code § 327 to argue that "Plaintiffs have not made any allegations that BBR 'contrived, prepared, set up,

1 | propose, or operate an endless chain,' as required by statute." Dkt. No. 138 at 6.
2 | This is not true. BBR's contriving, preparation, setting up, proposing, and operating
3 | of the stock inducement scheme formed part of the endless chain, (which Plaintiffs
4 | have properly pled).
5 |     Furthermore, BBR's argument is irrelevant. Plaintiffs bring suit under
6 | California *Civil* Code § 1689.2, which only references the penal code to borrow
7 | definition of what an endless chain is, not the concept of what conduct is relevant for
8 | recovery. *See* Cal. Civ. Code § 1689.2 (granting rights to any "participant in an
9 | endless chain scheme, as defined in Section 327 of the Penal Code. . . ."); *see also*
10 | Cal. Pen. Code § 327 (stating "[e]very person who contrives, prepares, sets up,
11 | proposes, or operates any endless chain is guilty of a public offense. . . ." separately
12 | from giving the definition borrowed by the Civil Code: "[a]s used in this section, an
13 | 'endless chain' means . . . .").
14 |     Therefore, Plaintiffs have properly pleaded their endless chain claims against
15 | BBR and BBR's motion to dismiss pursuant to FRCP Rule 9(b) should be denied.
16 |     **B.**    **Plaintiffs Have Met The Requirements of FRCP 8**
17 |     Defendants argue that Plaintiffs have "failed to allege 'factual content that
18 | allows the court to draw the reasonable inference that [BBR] is liable for the
19 | misconduct alleged,'" and thus "have failed to meet the pleading requirements of
20 | Rule 8." Dkt. No. 138 at 4-5, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).
21 |     The standard under Rule 8 is that a complaint need only set forth "a short and
22 | plain statement of the claim showing that the pleader is entitled to relief," so as to
23 | "give the defendant fair notice of what the ... claim is and the grounds upon which it
24 | rests." Fed. R. Civ. P. 8(a)(2). A complaint is sufficient if the facts give rise to "a
25 | reasonable expectation that discovery will reveal evidence" of the Plaintiffs' claims.
26 | *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).
27 |     Here, this Court has already once rejected BBR's efforts to dismiss Plaintiffs'
28 | endless chain claims under Rule 8. *See* Dkt. No. 120. Now, Plaintiffs have amended

their complaint to allege even more facts. BBR's arguments are without merit and therefore BBR's motion should be denied.

### C. Plaintiffs Have Met The Requirements Of FRCP 12(b)6

BBR claims that Plaintiffs have failed to "state a claim upon which relief can be granted" because "Plaintiffs do not allege that BBR was a party to the agreements between Plaintiffs and EFT" or "allege that BBR is receiving any benefits flowing from their alleged agreements with EFT." Dkt. No. 138 at 7-8. Under California law, participants in an endless chain scheme are entitled to "rescind the contract upon which the scheme is based" and to "recover all consideration paid pursuant to the scheme." Cal. Civ. Code § 1689.2.

Here, as set forth more fully in Plaintiffs' Second Amended Complaint, ¶¶ 67-86, Plaintiffs allege that EFT started the endless chain scheme, but that EFT enlisted BBR's assistance in increasing their returns from the scheme, and that BBR shared in the gains. Dkt. No. 132 at 16-25

BBR argues its share of ill-gotten gains of the scheme might not constitute "consideration paid ***pursuant*** to the [endless chain] scheme." Dkt. No. 138 at 9 (emphasis in motion). It claims that only EFT was the party to the actual agreement with Plaintiffs, so rescission should not be available. Dkt. No. 138 at 8. ("[BBR] was not a party to the agreements between Plaintiffs and EFT when they became affiliates.") Alternatively, it claims the scheme was in operation for years before BBR started to help grow it. Dkt. No. 138 at 10 ("if an endless chain scheme did exist, it was in operation long before BBR had any relationship with EFT or Plaintiffs.").

These reasons are not persuasive. First, under California law, "each participant in the wrongful act [is] responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." *de Vries v. Brumback*, 53 Cal.2d 643, 650 (Cal. 1960). Furthermore, recovery through rescission is not limited to the universe of other parties to a rescinded contract. *See, e.g., Snelson v. Ondulando Highlands Corp.,* 5

1  Cal. App. 3d 243, 253 (1970) (specifically rejecting the argument that "where an
2  agent of the vendor is not a party to the contract he is entitled to a nonsuit in an action
3  for rescission"); *Tullis v. Title Guarantee & Trust Co.*, 11 Cal. App. 2d 391, 395
4  (1936) (noting that those in privity with the parties to a contract can also be joined in
5  an action for rescission). Further, as this Court stated in its prior Order regarding the
6  motions to dismiss the first amended complaint the statute, Cal. Civ. Code §1689.2
7  provides for damages, not only rescission, so even if BBR were, arguendo, correct in
8  their argument regarding rescission, Plaintiffs would only be limited to Money
9  damages. Dkt. No. 120 at 3. ("This Court is not convinced that rescission is the only
10 remedy under the endless chain statute; that statute also provides for 'recovery of all
11 consideration paid pursuant to the scheme, less any amounts paid or consideration
12 provided to the participant pursuant to the scheme.'") (Quoting Cal. Civ. Code §
13 1689.2)

It does not matter when BBR joined the conspiracy, it is liable for it all. *de Vries*, 53 Cal. 2d at 648; *Favila v. Katten Muchin Rosenman LLP*, 188 Cal. App. 4th 189, 212 (2010). Therefore, BBR's motion to dismiss based upon FRCP 12(b)(6) should be denied.

## IV. PLAINTIFFS PROPERLY PLEAD THEIR RICO CAUSE OF ACTION PURSUANT TO 18 USC § 1962

### A. The PSLRA Does Not Apply To RICO Claims Predicated On The Endless Chain Allegations

BBR claims that Plaintiffs' RICO Claims "should be dismissed because they are barred by the PSLRA" which prohibits any RICO claim based upon "fraud in the purchase or sale of securities." Dkt. No 138 at 11.

As Plaintiffs discuss in Dkt. No 163, federal appellate courts have discussed extensively the question of what constitutes a security, with the leading cases being *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1945) (hereinafter "*Howey*"), and *SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476 (9th Cir. 1973) (hereinafter "*Turner Enterprises*").

1    For example, in *Howey*, the Supreme Court held that a security involved a
2 passive return on investment where the profits were to come "solely" from the efforts
3 of others. *Howey* dealt with a land sales contract for units of a citrus grove, together
4 with a service contract for running that grove. The Court held that a sale of those
5 units was a sale of securities because what was offered was a passive return on
6 investment and the profits were to come "solely" from the efforts of others. 328 U.S.
7 at 300.
8    *Turner Enterprises* slightly expanded the definition of a security from *Howey*
9 to include situations where a buyer contributed a modicum of effort (as opposed to
10 profiting "solely" from the efforts of others, as in *Howey*). 474 F.2d at 482. The
11 Court of Appeals reasoned that the law as stated in *Howey* would be easy for
12 potential defendants to evade by adding a requirement that the buyer contribute a
13 modicum of effort to sales of securities. Therefore, the fact that the investors in that
14 case were required to exert some small amount of effort if a return were to be
15 achieved did not automatically preclude a finding that the scheme involved an
16 investment contract. *Id.*
17    *Koscot Interplanetary*, a Fifth Circuit case that relied on *Turner*, came to a
18 similar result. S*EC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 485 (5th Cir. 1974).
19 It found that the efforts exerted by the individual participants in Koscot's program
20 was just "perfunctory" given the organizations large, coordinated recruitment
21 meetings run on "preordained script[s]." *Id*. at 485. Nonetheless, it "confine[d] [its]
22 holding to those schemes in which promoters retain immediate control over the
23 essential managerial conduct of an enterprise and where the investor's realization of
24 profits is inextricably tied to the success of the promotional scheme." *Id*. The court
25 there also specifically acknowledged that an arrangement "wherein the promoter
26 exercises merely remote control over an enterprise and the investor operates largely
27 unfettered by promoter mandates presents a different question than the one posed
28 herein." *Id*.

1 | Courts have further consistently held that this issue of whether the buyer is passive enough for the sale to be considered a security is not one that is resolvable on a motion to dismiss on the pleadings.

Since *Koscot*, the Fifth Circuit has since confirmed and emphasized that it is improper to decide whether a particular pyramid scheme involves investment contracts where reasonable minds could differ concerning the quantum of effort required by participants, even on summary judgment after a full evidentiary record. See *Piambino v. Bailey*, 610 F.2d 1306, 1318 (5th Cir. 1980) (reversing summary judgment on investment contract question while noting "[a]s in *Koscot* and *Turner*, as well as in *SEC v. Galaxy Foods, Inc.*, 556 F.2d 559 (2nd Cir. 1977), and *Bell v. Health-Mor*, 549 F.2d 342 (5th Cir. 1977), there were two distinct aspects to the distribution system set up by Bestline. These were the Retail sales portion of the business on one hand and the recruiting portion on the other, but it would appear, without our so deciding, that these aspects were both integral parts of one common scheme. The degree of investor participation and control differed significantly with respect to each of these aspects.")

Unlike the situation in *Howey* or *Turner Enterprises*, the scheme at issue here did not depend entirely or almost entirely on EFT or BBR's efforts. *Cf. Turner* at 479 (describing extensive role of the organizers' personnel in recruiting others to the pyramid scheme). Rather, participants in the endless chain were required personally to do a considerable amount of work to recruit others to the scheme. *See* Dkt. No. 132 at ¶¶ 31-66 (describing considerable recruiting work required of the individual participants as opposed to by supervisors or principals).

Here, BBR relies upon an *ipse dixit* argument that "this Court has previously held that an investment in a chain or pyramid scheme which operated in a similar fashion to the alleged chain in this case, was a security" with a blanket cite to *Turner Enterprises* without any discussion, analysis, or explanation. Dkt No. 138 at 12. As discussed extensively above, the scheme alleged here is distinguishable from that in

*Turner Enterprises*. Therefore, the law does not support BBR's claim that Plaintiffs' RICO claims are barred by the PSLRA and BBR's Motion should be denied.[2]

### B. Participating In The Endless Chain Does Not Constitute The Purchase Of Securities.

As discussed in Dkt. No. 163, participation in EFT did not in and of itself constitute the purchase or sale of a security. BBR argues, however, that all that matters is that participants had to purchase products to unlock the right to purchase shares (a fact BBR asserts here and disputes elsewhere).[3] This argument is fatally flawed. Indeed, many product purchases did not unlock any rights to purchase shares. And the pyramid scheme had been operating through product purchases without any stock purchase before EFT had stock to unlock. Dkt. No. 132 at 7-13. Therefore, it is undisputed that the participation in the endless chain did not necessarily involve any purchase of a security.

BBR further asserts that a "security" is "any instrument or interest that is commonly known as a 'security.'" Dkt. No. 138 at 11. BBR's argument is hopelessly reductive. BBR attempts to define a security as a security, then concludes that this definition is satisfied here. It is not. Here, the mere purchase of EFT products did not form an instrument or interest that could be bought or sold or which were known to be or thought of as securities. Rather, as in the case of *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, (1975), "there was no likelihood that the purchasers had

---

[2] It is also the law of this case that the PSLRA does not apply to Plaintiffs' endless chain allegations. This Court previously stated, "Subject to an exception *not applicable here*, Local Rule 23-3 requires that a motion for class certification be filed within 90 days after service of a pleading that purports to commence a class action unless otherwise ordered by the Court." Dkt. No. 103 (emphasis added). In turn, Local Rule 23-3 states "Within 90 days after service of a pleading purporting to commence a class action *other than an action subject to the Private Securities Litigation Reform Act of 1995, P.L. 104-67, 15 U.S.C. § 772-1 et seq.*, the proponent of the class shall file a motion for certification that the action is maintainable as a class action, unless otherwise ordered by the Court." Thus, this Court has already held that the PSLRA does not preclude this claim.

[3] Elsewhere, BBR asserts the opposite to distance their involvement with the endless chain, stating "becoming an affiliate of EFT was not a prerequisite for purchasing EFT stock." Dkt. No. 138 at 9.

been misled . . . into thinking that the federal securities laws governed their purchases." *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 687, 105 S. Ct. 2297, 2302, 85 L. Ed. 2d 692 (1985). This is especially true because Plaintiffs made separate purchases of stock in EFT Holdings directly and (somewhat) independently of any product purchases. *See* Dkt. No. 120 at 2. BBR's argument therefore fails.

### C. Plaintiffs' SAC does not state RICO Claims based on Pump and Dump Scheme

As explained in Dkt. No. 163, Plaintiffs do not base their RICO claims on the pump-and-dump scheme or on any conduct otherwise actionable as securities fraud. Plaintiffs bring RICO claims based upon predicate acts of money laundering and transferring stolen property, as this Court has allowed, doing so only in the context of alleging violations of these criminal statutes and for the purpose of identifying where and to whom the ill-gotten gains have flown. Dkt. No 163 4-5. Therefore, BBR's argument fails.

### D. Plaintiffs have properly Plead Defendant BBR's Predicate Acts of Transferring Stolen Property with Sufficient Particularity

Finally, BBR claims that Plaintiffs "fail[] to plead the predicate acts of transferring stolen property with the specificity required by Rule 9(b)." Dkt. No 138 at 19. BBR claims "nowhere in the SAC do Plaintiffs allege that BBR made or received any . . . 'insider 'loans' that were never collected.'" However, Plaintiffs do allege just that. The SAC plainly states that in July of 2010, EFT lent $5,000,000—unsecured—to CTX Virtual Technologies, Inc. ("CTX"); that "one of the directors of CTX is Lau, part-owner of Greenstone and a managing director of Buckman"; and that "the true purpose of this effectively defaulted loan to CTX was to gift or otherwise siphon millions more off of EFT's books." Dkt. No. 132 ¶ 156. Plaintiffs have clearly plead the time, pace, and nature of the fraudulent activity, and therefore have properly pled predicate acts against BBR with sufficient particularity. *See Semegen v. Weidner*, *supra*. Plaintiffs have provided facts that there was a

1  conspiracy and that BBR was involved, which is sufficient to maintain a RICO claim
2  against BBR. Therefore, BBR's Motion should be denied.

## V. CONCLUSION

For the foregoing reasons, BBR's motion to dismiss should be denied.

Dated: March 16, 2015                     Respectfully submitted,

                                          HOWARTH & SMITH

                                    By:   /s/ *Suzelle M. Smith*
                                          Suzelle M. Smith

                                          Attorneys for Plaintiffs